Complaint

[Equal Rights / Gender / Racial Discrimination] ✓

Related: 3:26-cv-00234-SLG
"Tegoseak v. Anchorage Police Dept. Et al,"
"3AN-25-01538CR"

3/11/25 K.H. engaged Anchorage Police Department with false testimony of complaint.

K.H. provided A.P.D. Detective Rosendo Perez with complaint displaying a multitude of contradictions, conflictions, and anomolies through narrative in contrast to actual occurences.

However these variances would not be recognized until K.H. provided narrative to AkCares, later that same day with Rosendo Perez at forensic Interview with AkCares agent Sam Beard.

Where in glaring variation of material fact K.H. also provided conclusory contradiction of not just facts given through forensic Interview that would not be known until publication of the report created by Mindy Mitchell, concealing the original.

The contrast between the AkCares forensic Interview and A.P.D. police report Interview given previously that same day, was so Irreparable that with the creation of a sworn statement by Mindy Mitchell, Rosendo Perez made the decision to entrap me. Perez using K.H., had K.H. threaten me w/police, prior to K.H. admitting she'd lied to her mother just before finally acquiescing to K.H.

request to apologize, with no less than adamant protest, refusal and suspicion up until that point. The lack of predisposition omitted from the "apology" being used as probable cause in my arrest.

Purposed specifically for the deprivation of my First Amendment (familial rights to reside w/ my family), amongst several other constitutional violations to accomplish the desired outcome of A.P.D. agents; to provide prosecutors Julia McCartney and Lindsey Maguigan of Office of Special Prosecutions with required information to obtain an expedited return of Indictment in utilization of Fed. R. Civ. P. §603.02. This method to acquire indictment requires a two-part submission in application, (1) complaint (2) a demonstration of probable cause with the complaint. to bypass AK.R. Crim. P. part II (b), (c), and (d) - felony preliminary examination guaranteed by Alaska Constitution §11 (Rights of the Accused) and backed by United States Constitution guarantee of confrontation provided in the Sixth Amendment and rights to Due Process in the Fourteenth Amendment.

Inappropriate use of this method to procure indictment severe equity.

From the use of Fed.R.Civ.P. §603.02, disabling my ability to quickly invalidate claims, to being denied access to the courts in attending all discovery hearings in the first year of incarceration by the States use of my Defense Attorneys role of "representative" to waive my presence at discovery hearings, w/o my Knowledge or consent. Between April 5th, 2025 and April 8th, 2025 I had exclaimed to my then Defense Attorney Ben Dresner my "right to be present and desire to attend every discovery hearing moving forward". Benjamin Dresner's reply was that he has "the right to waive my presence, and has been doing so, that The State and Judge does' not like the accused being present". This is documented 4/8/25 in writing, in the possession of the field office of Anchorage FBI in an envelope titled "Ineffective Counsel". I was not informed by Ben Dresner what the probable cause was, the entirety of his "representation", nor by his replacement Nathan Hainje, (another Public Defender Agency) attorney, in August of 2025. First contact with Nate Hainje did not occur until Oct. or Nov., In the months following his appointment. From the time of Nathan Hainjes appointment he neglected keeping contact with me, exhibited failure to prepare my Defense, thoroughly informing myself

with necessary facts; refusal to fulfill requested subpoenas, pre-trial motions, and investigation into my given mitigative info. Nathan informs me 11mo after his appointment 6/18/26 in meeting at Anchorage Jail "his last day at P.D.A." that "The State will not allow me to subpoena K.H's phone" - to retrieve the text provided by Perez's report of Interview, the text sent from "K.H. to Z.A. that following evening". My verbatim knowledge of that text (i did not personally have access to - or was present for) proving fabrication of report - due to that info not being in sworn statement used.

Preceding that meeting with Hainje, the previous month on a call with another P.D.A. employee: Ruby Zipco, the investigator assigned to assist Desner; she informs me following my expressed dissatisfaction with Hainje's lack of follow through, and him finally informing me 4/9/26 of the probable cause, and me letting her know use of it "is fraud"-- Ruby tells me "The State does not allow us to get certain subpoenas before trial". A curious statement followed by response to the

Statement I made of the probable cause being fraud: "not to make excuses for The State, but they do that to people all the time". The statement was made by a secondary source (19) days prior to it's confirmation; that "the State" restricts, dictates and holds controlling influence over how Public Defenders do their statutory duties.

K.H. not only offered false claims against me to the state, but in her efforts to remove obstacles from her desired outcome; in the weeks and months following repeatedly reported her mother.

I am mixed race and have a multi-ethnic background being Black and Alaskan Native with my family being from the Nana Region of Alaska. But adopted into an Inupiaq family from Barrow, AK. I was categorized as "native/black" in report.

K.H. is of mixed race being 1/4 black and 3/4 white, was categorized as "white" in report. Jennie Cunningham (K.H. "mother") is white and 1/16th Cherokee, categorized as "white" in report.

In combination to reporting w/o her mother and against suggestion of Jennie to go to the hospital 3/6/25, rather than K.H. requesting to be taken to Z.A.'s...following complaint to her mother and my arrest 3/12/25, K.H., behind her mothers back had been communicating with The State (DA) attempting to have Jennie arrested the same way she did to me. K.H. alleged that Jennie Cunningham" had been physically abusing her and her five other siblings". This effort by K.H. was on-going for more than a month. The State involved O.C.S., and following multiple visits to our home, the State, in the form of O.C.S. determines K.H.'s claims to be incredible without further follow-up or resources utilized in pursuit of claims.

No efforts were made to take Jennie into custody. No efforts made to fabricate plausibility or merit to pursue.

When she, a woman, a mom, a white female, perfectly and equally capable of the claims alleged, was found without valid merit, she was dismissed. Even when K.H. claimed Jennie had "left 'Mongolian spots' on the two youngest boys". Making obvious the claims to be pointedly unrealistic; just as outrageous of the claims by K.H in regard to myself and her allegations - redacted from sworn statements, given to A.P.D. and AkCares, provided to DA.

With proof of concealing exculpatory material evidence and validation of fabrication of reports ▓ provided through an entry in report by Rosendo Perez in her received narrative. This entry is a portrayal of timeline given by K.H; that: "K.H. texted Z.A. "that following evening"- stating "Hey something happened, I got into another fight with my Dad, can I come over". This entry by Perez of provided info from K.H. not only contradicts claim(s) removed by APD. that K.H. specified in allegation. "It wasn't

feeling good, so my Dad brought me tea. It was bitter tasting, and shortly after I passed out - sleeping until afternoon the next day". K.H. is asked what time I "gave her tea" - K.H. replies "around 4pm". The entry supplied by Perez depicting the text sent by K.H. following. The text provides the reality of the actual timeline of events supported by testimony of Jennie's presence for the dates mentioned (3/5/25) & (3/6/25); the alleged date of "drugging" - when I was clocked in at work at Payless Auto 9am - 5:21p (3/5/25). Between the hours of 4pm and midnight 3/5/25 K.H. is known to be concious by her mother prior to my arrival home at 5:30p - supported by location. K.H. made her siblings dinner at 7pm. She was playing Roblox, "dress to impress" while on video chat with Z.A. at 9:40pm; at the same time as being caught smoking weed. She was scolded and informed her mother would be told in the morning as this was one of a few times of being caught. K.H. then around 11p-12A texts

me w

having smoked.

The next day K.H. on 3/6/25 is woken up by Jennie Cunningham at 9:30A, in bed, fully clothed and in stark contrast of claims she made to A.P.D. and AKCares. After being woken up K.H. had gone upstairs and got into an argument with Jennie Cunningham. Jennie had called me up to "come deal with it", as I am the usual disciplinarian. Upon arrival I did not give K.H. the time to try to ask me to side with her in support of her disrespect and against the "unfair" request of Mom to assist her in "keeping an eye on the kids." I shut K.H. down immediately utilizing contempt of the event of the previous night, and what she referred to in complaint as being "another fight with my Dad", in the text refused by the State, for the Defense to obtain for the reason of contradiction by it's existence. After being sent to her room in consequence of the argument, I'd let K.H. know "I'd talk to mom after she smokes a cigarette."

Almost immediately, moments after lighting up, K.H. is out the door lying to Jennie in anticipation of the knowledge being given to mom resulting in trouble; and an appreciable grounding. Preparing to make a move back home to Oregon, K.H. does not want to make, in two to three weeks; her priority is to spend as much time w/ Z.A. as possible.

Promptly after allegations are made to Jennie between 10:15Am & 11am, as mentioned Jennie takes K.H. to Z.A's. K.H. stayed at Z.A's from 3/6/25 until weeks after my arrest; she'd neglected informing Jennie her cycle had started prior to coming upstairs, a detail she'd mentioned to me prior to argument. Rather than going to the hospital and immediately going to A.P.D., K.H. waits five full days to report, w/o her mom who'd strongly suggested going 3/6/25.

K.H.'s Life360 location, requested by myself a multitude of times pertaining to providing evidence that K.H.'s location was in direct contradiction to lies supplied to State agencies; that would coincide in conflict of the redacted info that K.H. texted Z.A. (that following evening) - and that K.H. WAS at Z.A's at the time the text asking to "come over" was sent. K.H's Life360 location for 3/11/25 was also requested not just by me, but by my mom, best friend and Power of Attorney through texts. Provision of this info would prove that K.H. was in fact off of 3200 Providence Dr., at AKCares in the presence of Rosendo Perez and Sam Beard; at the time "probable cause" was criminally omitted from it's mitigative context. This info would invalidate probable cause and conclusively prove fraud was committed to initiate legal proceedings and charge me going

to show that the only evidence provided was fabricated. Effectively giving exposure to commonly used method to pursue conviction.

I had been incarcerated over one month before having seen the entry of report giving info of specific text sent 3/6/25, In my first meeting with Ben Drasner. Without the information being provided by my attorney - It would be IMPOSSIBLE for me to have knowledge of the message, let alone to be able to Quote It.

After noticing the absurd amount of contradictions and how what ~~Kitt~~ claimed was obviously implaus-ible - I had mailed the Police report & Al Cares report In the same envelope to my mom Jenifer Thornton. This would be the first time a D.O.C. (Goose Creek) officer hindered my mail, against Federal outgoing policy although It was %100 compliant. OFC Henson stopped multiple pieces of mail - starting with the envelope mentioned being given to Sgt. Trainer 6/9/25 between 9pm and 11pm. To which

Sgt. Trainer on video in mod (Hotel), and inside the administrative office, read through an obvious police and AKCares report. Sgt. Trainer then brought my mail to me as I waited outside my door to take my property to intake, as I had court at Anchorage Jail the next day. She not only addresses me as "the weirdo" to OFC. Henson but then proceeds to inform me that "I shouldn't be giving this back to you. I should give it to the DA", claiming it to be "witness tampering". One of AK.D.O.C's mail policies (against 'witness tampering') - used to circumvent federal law.

Trainer gives me the mail, I take it with me into booking, on video record, then at Anchorage Jail, it is on record being given to me going into holding; then video in the court-room displays me handing original complaints to Ben Dresner.

I gave the reports, I'd highlighted, all the contradictions and alike purposed to provide the truth to my wife and family.

I'd thought the info would be "safe" with "my attorney".

Upon Nathan Hainje's appointment I'd requested the envelope I'd given to Ben 6/9/25, to which Nathan said "I talked to Ben and he said he'd filed it w/ the rest of your paperwork at the office". (the day we met in Oct/Nov).

On the 4/9/26 phone call - Nathan told me when I'd inquired of the 'reports, the highlighted ones"-- He responded "Ben said you never gave him anything"- to which I'd started yelling at him, this directly prior to informing me of what probable cause was.

I requested footage of specific timeline to prove further the existence of my claim, to no avail, as I'd become accustomed to.

Efforts have been made to hinder my ability to not just invalidate claims, but to expose the States relentless pursuit with nothing but fabricated support.

There is one common factor - the judges are all white, those prosecuting me are white, my attorneys are white.. According to a statistic in recent years provided by Anchorage DailyNews, 70&2 of incarcerated populus in Alaska are Alaskan Natives.

Being the biggest state with the smallest population per capita, yet having U.S. topping conviction ratings - those kind of results can only be created.

No efforts were made to create pursuit of my wife, yet every possible administrative option has been utilized against me by the state even after DNA (taken from a wall- claimed to be another substance, although it was in fact homemade slime), returned 10mo later

as being (negative) for DNA. I was refused ability to bail, refused availability of dismissal. Refused ability to rebut facts through rights guaranteed by two Constitutions; when I had submitted info to the court, doing so it was unused and ignored.

When I'd started really seeing no intent to bring me to trial, 460+ days pre-trial, with my "attorney" waiving my speedy trial w/o my consent or knowledge until 5/15/26 at a court hearing.

In that hearing a 'self-rep' hearing to address issues regarding Nathan Hainje's ineffective counsel - I addressed "Not being provided 'Felony preliminary hearing'" - and was told by Judge Easter "We don't do preliminary hearings here" - with cattitude. Further reinforcing circumvention of due

process to prejudice me from the start. Either I'm black/Native -OR- The State treats ALL defendants with such flagrant prejudice and w/o equity. No right is safe in the new legal regime this court creates, actions of "the State" render constitutional guarantees meaningful in name only; not in application.

My wife a white-female.

Myself a colored male.

"Publication of Mitchell report"

3/12/25 - Arrest, 4/05/25 - Bail hearing w/ McCortney / Saxby

4/21/25 or 4/22/25 - first meeting w/ Ben to go over discovery (given original report)

8/10/25 or 8/11/25 last meeting w/ Ben -informs of "private sector". Appt of Nathan Hamye.

10/11th month of 2025 First meeting w/ Nathan (did not get along) - requested "highlighted letter" Second time talking he tells me Ben "filed it".

4/9/26 on the same call prior to Nathan telling me what probable cause was he told me In inquiry of the "highlighted papers" - that had asked Ben again and Ben replied "You never gave him anything".

5/15/26 - Easter at self-rep "We don't do preliminary hearings, no".

5/29/26 - Call w/ Zipco "The State does not let us get certain subpoenas before trial", and "not to make excuses for the State but, they do that to people all the time" - in response to fraud statement.

6/18/26 - Thursday Nathan "The State will not let me subpoena K.H." phone, but we can subpoena yours"